

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

No. 02-25-00475-CV

PECOS HOUSING FINANCE CORPORATION, A TEXAS NONPROFIT CORPORATION; PLEASANTON HOUSING FINANCE CORPORATION, A TEXAS NONPROFIT CORPORATION; LA VILLA HOUSING FINANCE CORPORATION, A TEXAS NONPROFIT CORPORATION; AND MAVERICK COUNTY HOUSING FINANCE CORPORATION, A TEXAS NONPROFIT CORPORATION, Appellants

V.

CITY OF ARLINGTON AND CITY OF FORT WORTH, Appellees

---

On Appeal from the 348th District Court
Tarrant County, Texas
Trial Court No. 348-363561-25

---

AND

No. 02-25-00476-CV

PECOS HOUSING FINANCE CORPORATION, A TEXAS NONPROFIT CORPORATION; AND CARA TURN, MARIBEL ALVAREZ, AND IRENE DOMINGUEZ, IN THEIR OFFICIAL CAPACITIES AS BOARD MEMBERS OF PECOS HOUSING FINANCE CORPORATION, Appellants

V.

CITY OF HALTOM CITY, TEXAS, Appellee

On Appeal from the 348th District Court
Tarrant County, Texas
Trial Court No. 348-364135-25

Before Sudderth, C.J.; Wallach, and Walker, JJ.
Opinion by Justice Walker

**OPINION**

In these consolidated cases, Appellants Pecos Housing Finance Corporation, Cara Turn, Maribel Alvarez, and Irene Dominguez (collectively, the Pecos Appellants)[1] appeal from the trial court's orders granting temporary injunctive relief to Appellees City of Arlington, City of Fort Worth, and City of Haltom City. Raising three issues, the Pecos Appellants argue that (1) the trial court lacked subject-matter jurisdiction over the Appellees' claims; (2) the temporary-injunction orders are facially void because they fail to satisfy Texas Rule of Civil Procedure 683's strict requirements; and (3) even if the orders comply with Rule 683, the trial court nevertheless erred by issuing the temporary injunctions because the Appellees failed to prove all the specific elements necessary for such relief. Although we reject the Pecos Appellants' contention that the trial court lacked subject-matter jurisdiction, we agree that the temporary-injunction orders fail to comply with Rule 683 and are thus facially void. Accordingly, we reverse the trial court's orders, dissolve the temporary injunctions, and remand these matters to the trial court for further proceedings.

## I. BACKGROUND

In 1979, the Texas Legislature adopted the Texas Housing Finance Corporations Act (the HFC Act) to facilitate the development of low- and moderate-

---

[1]Turn, Alvarez, and Dominguez are Pecos's board members. They are parties to this appeal because Haltom City sued them individually in their board-member capacities.

3

income housing. *See generally* Tex. Loc. Gov't Code §§ 394.001–.907; *see also id.* § 394.002(a) (explaining that the HFC Act's purpose "is to provide a means to finance the cost of residential ownership and development that will provide decent, safe, and sanitary housing at affordable prices for residents of local governments"). To achieve its goal of creating more affordable housing, the HFC Act authorizes local governments to create and sponsor housing finance corporations (HFCs), which are nonprofit organizations comprised of local officials that help coordinate and facilitate affordable-housing projects. *See id.* §§ 394.002, .003(8), .011(a), .032. And—of particular significance to this case—because HFCs are nonprofit entities that are designed to further a public purpose, the HFC Act provides that HFC-owned properties and the income derived from those properties are tax-exempt. *See id.* § 394.905(a).

Pecos is an HFC organized under the HFC Act. Although its sponsoring municipality is the Town of Pecos, it began acquiring and obtaining tax exemptions on real property located in other jurisdictions, including Arlington, Fort Worth, and Haltom City.

Contending that Pecos's efforts to acquire and obtain tax exemptions on property outside the geographic boundaries of its sponsoring municipality violated the HFC Act and wrongfully deprived them of tax revenue, the Appellees sued the Pecos

4

Appellants and the Tarrant Appraisal District (TAD)[2] for declaratory and injunctive relief.[3] Specifically, the Appellees sought injunctions prohibiting the Pecos Appellants from acquiring more property within the Appellees' boundaries and from seeking or obtaining any more tax exemptions on such property. The Pecos Appellants filed pleas to the jurisdiction and opposed the Appellees' requests for injunctive relief.

The trial court signed temporary restraining orders in the Appellees' favor and scheduled a hearing to consider their requests for temporary injunctions and the Pecos Appellants' pleas to the jurisdiction. Following the hearing, the trial court denied the Pecos Appellants' pleas to the jurisdiction and signed orders granting the Appellees temporary injunctive relief. The orders broadly enjoined the Pecos Appellants from "acquiring title to real property" in Arlington and Fort Worth; "purchasing or approving the purchase of real property" in Haltom City; and

---

[2]The Cities of Arlington and Fort Worth sued the Tarrant Appraisal District's chief appraiser in his official capacity, not the appraisal district itself.

[3]At the time that Appellees filed suit, the HFC Act did not explicitly prohibit an HFC from purchasing or obtaining tax exemptions on property outside its sponsoring municipality's boundaries. But in May 2025, the Texas Legislature amended the statute to expressly provide that an HFC cannot own or obtain tax exemptions on property outside its sponsoring jurisdiction unless the jurisdiction in which the property is located grants its approval. *See* Tex. Loc. Gov't Code §§ 394.031(c)–(d), 394.9026, 394.905; *see also* Act effective May 28, 2025, 89th Leg., R.S., ch. 208, §§ 4, 9–11. As the City of Arlington's trial counsel acknowledged at the temporary-injunction hearing, the May 2025 amendments "drastically changed" the HFC Act and gave the Appellees "most of [the] requested relief" that they sought in this case.

5

"requesting, approving," "obtaining, seeking to obtain, or receiving" any tax exemptions on real property located within the Appellees' geographic boundaries.

This interlocutory appeal ensued.

## II. DISCUSSION

As noted, the Pecos Appellants challenge not only the merits of the Appellees' claims and the temporary-injunction orders' compliance with Rule 683 but also the trial court's subject-matter jurisdiction to consider the claims and enter the challenged orders in the first place. Because subject-matter jurisdiction is a threshold issue, we address it first. *See Allison Publ'ns, LLC v. Doe*, 654 S.W.3d 210, 218–19 (Tex. App.—Fort Worth 2022, pet. denied); *see also In re Guardianship of Semrad*, No. 01-21-00491-CV, 2023 WL 5534251, at *3 (Tex. App.—Houston [1st Dist.] Aug. 29, 2023, no pet.).

### A. SUBJECT-MATTER JURISDICTION

In their first issue, the Pecos Appellants contend that the trial court lacked subject-matter jurisdiction over the Appellees' claims—and therefore erred by denying their pleas to the jurisdiction—because (1) the Pecos Appellants have governmental immunity and (2) the Appellees failed to exhaust their administrative remedies.[4] We disagree on both fronts.

---

[4]The Pecos Appellants also argue that the Appellees lack standing to challenge the constitutionality of the HFC Act because they are not charged with implementing it. But this argument functions as a subpart of their broader governmental-immunity argument as it is designed to show that the Appellees cannot creatively plead around the Pecos Appellants' purported governmental immunity by "tacking on" alternative constitutional claims. Because we conclude that the Pecos Appellants do not have

## 1. Standard of Review

A plea to the jurisdiction challenges the trial court's subject-matter jurisdiction to hear a case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). We review a trial court's ruling on a plea to the jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In our review, we construe the pleadings liberally in favor of the pleader and look to the pleader's intent to determine whether the facts alleged affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Id.*

## 2. Governmental Immunity

Sovereign immunity from suit defeats a trial court's subject-matter jurisdiction. *Nettles v. GTECH Corp.*, 606 S.W.3d 726, 731 (Tex. 2020); *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638–39 (Tex. 1999). Sovereign immunity is inherent in the state's sovereignty, and certain political subdivisions—including counties, cities, and school districts—enjoy a similar protection called governmental immunity. *See Univ. of the Incarnate Word v. Redus (Redus II)*, 602 S.W.3d 398, 404–05 (Tex. 2020); *see also Hays St. Bridge Restoration Grp. v. City of San Antonio*, 570 S.W.3d 697, 703 (Tex. 2019) (explaining that "[s]overeign immunity protects the state and its divisions, while governmental immunity protects political subdivisions").

---

governmental immunity in the first place, we need not—and therefore do not—address this standing argument. *See* Tex. R. App. P. 47.1.

Relying on a case from the Fourteenth Court of Appeals in Houston, the Pecos Appellants assert that Pecos is a governmental entity and that they therefore enjoy governmental immunity. *See Johnson v. Guerrera*, No. 14-20-00260-CV, 2021 WL 4899450, at *4–5 (Tex. App.—Houston [14th Dist.] Oct. 21, 2021, no pet.). But *Johnson* is not binding on this court and did not even address the issue of whether HFCs are entitled to governmental immunity; rather, its focus was whether an HFC constituted a governmental unit for adverse-possession purposes. *See id.*; *see also Univ. of the Incarnate Word v. Redus (Redus I)*, 518 S.W.3d 905, 911 (Tex. 2017) (recognizing that the issues of governmental-unit status and immunity are separate inquiries). And applying the analytical framework for assessing governmental immunity, we conclude that Pecos is not immune.

As noted, governmental immunity protects the state's political subdivisions from suit and liability. *See Redus II*, 602 S.W.3d at 404–05; *Rosenberg Dev. Corp. v. Imperial Performing Arts, Inc. (Rosenburg I)*, 526 S.W.3d 693, 705 (Tex. App.—Houston [14th Dist.] 2017), *aff'd*, 571 S.W.3d 738 (Tex. 2019). But the HFC Act explicitly provides that an HFC "does not constitute a municipality, county, or other political corporation or subdivision of this state." Tex. Loc. Gov't Code § 394.015(d). Thus, the protection of governmental immunity does not extend to HFCs. *See Rosenberg I*, 526 S.W.3d at 705.

This conclusion is reinforced by the Texas Supreme Court's decisions analyzing analogous entities' claimed entitlement to governmental immunity. In *Brown & Gay*

8

*Engineering, Inc. v. Olivares*, the court rejected the petitioner's argument that sovereign immunity should apply to private entities performing government functions and clarified that sovereign immunity should be extended only when doing so serves to protect "the public fisc" by "preventing potential disruptions of key government services that could occur when government funds are unexpectedly and substantially diverted by litigation." 461 S.W.3d 117, 121–24 (Tex. 2015). Similarly, in *Rosenberg Development Corp. v. Imperial Performing Arts, Inc. (Rosenberg II)*, the court held that economic development corporations—which, like HFCs, are organized by statute as public, nonprofit corporations, *see* Tex. Loc. Gov't Code § 501.051, .053(a), .054(a)— do not have governmental immunity. 571 S.W.3d 738, 752 (Tex. 2019).

Because HFCs—like economic development corporations—"do not exist quite like an arm of the state government" and because "the fundamental purposes of governmental immunity"—primarily, the protection of "the public fisc"—do not countenance immunizing HFCs,[5] we conclude that the Pecos Appellants do not enjoy governmental immunity. *See Rosenberg II*, 571 S.W.3d at 752; *Brown & Gay Eng'g, Inc.*, 461 S.W.3d at 121.

---

[5]Indeed, in the present case, the suits filed against the Pecos Appellants were brought by cities seeking to protect "the public fisc" and prevent the potential disruption of government services. Thus, the extension of governmental immunity to the Pecos Appellants would actually undermine, rather than promote, immunity's fundamental purposes.

### 3. Failure to Exhaust Administrative Remedies

The Pecos Appellants also argue that the trial court lacked jurisdiction because the Appellees failed to follow the exclusive statutory remedial procedure prescribed for taxing units to challenge the exclusion of property from the appraisal records. According to the Pecos Appellants, the Appellees were required to file a challenge petition with the appraisal review board before filing suit. *See* Tex. Tax Code §§ 41.03, 42.031, 42.09, 42.21. But this argument oversimplifies the Appellees' grounds for filing suit and misconstrues the Tax Code.

First, the argument ignores the fact that the Appellees sought relief not only as to existing tax exemptions but also as to tax exemptions that might be granted in the future. And the administrative remedies identified by the Pecos Appellants do not apply to tax exemptions that have yet to be granted. *See id.* § 41.03(a). Further, the administrative remedies would only apply—if at all—to the Appellees' claims against TAD; nothing in the Tax Code would preclude them from seeking declaratory and injunctive relief against the Pecos Appellants. *See id.*; *see generally id.* §§ 41.01–43.04. More fundamentally, because the Appellees' claims are premised on the Pecos Appellants' and TAD's purported violations of the HFC Act, they are beyond the scope of the appraisal review board's jurisdiction. *See id.* § 41.03(a) (enumerating the matters that a taxing unit may challenge before an appraisal review board); *City of El Paso v. Mountain Vista Builders, Inc.*, 557 S.W.3d 617, 620 (Tex. App.—El Paso 2017, no pet.) ("Appraisal review boards . . . have exclusive jurisdiction over [property-tax]

10

protests."); *see also In re ExxonMobil Corp.*, 153 S.W.3d 605, 615 (Tex. App.—Amarillo 2004, orig. proceeding) ("[I]n an analysis of a claim of exclusive administrative agency jurisdiction, the administrative body is limited to the powers clearly and expressly given it[,] and courts will not imply additional agency authority."). Indeed, the Tax Code expressly authorizes taxing units to sue appraisal districts to compel compliance with "other applicable law"—such as the HFC Act. *See* Tex. Tax Code § 43.01.

Accordingly, we conclude that the Appellees were not required to file a challenge petition with the appraisal review board before filing suit and that their failure to do so did not deprive the trial court of subject-matter jurisdiction.

### 4. Disposition of First Issue

Because the Pecos Appellants do not enjoy governmental immunity and because the Appellees were not required to file a challenge petition with the appraisal review board before filing suit, the trial court did not lack subject-matter jurisdiction. Accordingly, we overrule the Pecos Appellants' first issue.

### B. TEMPORARY-INJUNCTION ORDERS

In their second issue, the Pecos Appellants contend that the temporary-injunction orders are facially void because they fail to comply with Rule 683's strict requirements. We agree.

### 1. Standard of Review

The decision to grant or deny a request for a temporary injunction is within the trial court's discretion, and we will not reverse its decision absent an abuse of this

11

discretion. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (op. on reh'g). In ordering temporary-injunctive relief, a trial court abuses its discretion if it does not strictly comply with the requirements of Rule 683. *Home Asset, Inc. v. MPT of Victory Lakes Fcer, LLC*, No. 01-22-00441-CV, 2023 WL 3183322, at *1 (Tex. App.—Houston [1st Dist.] May 2, 2023, no pet.).

## 2. Applicable Law

According to Rule 683, a temporary-injunction order must "set forth the reasons for its issuance" and "be specific in terms." Tex. R. Civ. P. 683. It must also "describe in reasonable detail and not by reference to the complaint or other document[] the act or acts sought to be restrained" and state precisely why the applicant would suffer irreparable injury in the absence of an injunction preserving the status quo pending a trial on the merits. *Id.*; *Williams v. NE CS First Nat'l, LP*, No. 02-23-00086-CV, 2023 WL 4781174, at *2 (Tex. App.—Fort Worth July 27, 2023, no pet.). An unsupported or conclusory statement that irreparable harm would occur without the injunction is insufficient to satisfy Rule 683. *Williams*, 2023 WL 4781174, at *2. Further, "we cannot infer the reasons for an injunction from the pleadings, evidence presented at the hearing on the application, or the trial court's oral pronouncement." *Home Asset, Inc.*, 2023 WL 3183322, at *2.

When determining if a temporary-injunction order is sufficiently specific to comply with Rule 683, we look no further than the order itself. *Powell v. Baker*, No. 04-22-00653-CV, 2023 WL 5418810, at *10 (Tex. App.—San Antonio Aug. 23,

2023, no pet.); *Autonation, Inc. v. Hatfield*, 186 S.W.3d 576, 582 (Tex. App.—Houston [14th Dist.] 2005, no pet.). A temporary-injunction order that does not strictly satisfy Rule 683's requirements is void. *In re Luther*, 620 S.W.3d 715, 722 (Tex. 2021) (orig. proceeding); *Bellefeuille v. Equine Sports Med. & Surgery, Weatherford Div., PLLC*, No. 02-15-00268-CV, 2016 WL 1163364, at *3 (Tex. App.—Fort Worth Mar. 24, 2016, no pet.).

## 3. Analysis

Here, the trial court signed three separate temporary-injunction orders, one for each of the Appellees. None of them satisfies Rule 683's strict requirements.

The orders granting temporary injunctions to the Cities of Arlington and Fort Worth are woefully deficient. First, they do not set forth any reasons for their issuance. *See* Tex. R. Civ. P. 683. Instead, they merely recite that the trial court determined that the temporary-injunction applications should be granted "[a]fter considering the [a]pplication[s], briefing and arguments of the parties, evidence admitted into the record, papers on file with the Court, and applicable law." Moreover, they do not state precisely why the cities would suffer irreparable injury in the absence of the injunctions. *See Williams*, 2023 WL 4781174, at *2. Indeed, they do not even state that the injunctions are necessary to prevent irreparable harm, much less include a recitation of facts and an explanation as to how those facts support this conclusion. *See id.* at *3; *see also Quintanilla v. De La Rosa*, No. 13-20-00575-CV, 2021 WL 3085854, at *2 (Tex. App.—Corpus Christi–Edinburg July 22, 2021, no pet.)

13

(holding temporary-injunction order void because it did not contain any statement explaining the reasons for its issuance); *Grounds v. First GroundRock Royalties, LLC*, 629 S.W.3d 674, 678 (Tex. App.—San Antonio 2021, no pet.) (holding temporary-injunction order void because its reference to the application did not satisfy Rule 683's requirement that the order specifically state "the reasons why injury will be suffered if the interlocutory relief is not ordered"); *Vantage Bank Tex. v. Gonzalez*, No. 13-19-00265-CV, 2020 WL 1615662, at *3 (Tex. App.—Corpus Christi–Edinburg Apr. 2, 2020, no pet.) (holding that even if the trial court concluded that the party seeking the injunction would suffer irreparable harm, the injunction was void if the court did not recite the facts and include an explanation supporting its conclusion).

Although Haltom City's temporary-injunction order is not as egregiously deficient as the others, it still falls well short of Rule 683's standards. Unlike Arlington's and Fort Worth's orders, it at least includes findings that Haltom City "has established a probable right to recover against" the Pecos Appellants and "will suffer irreparable injury[] for which there is no adequate remedy at law" unless it is granted temporary injunctive relief. But the order fails to adequately explain why Haltom City would suffer irreparable harm in the absence of a temporary injunction. *See Williams*, 2023 WL 4781174, at *3.

> To support the irreparable-harm finding, the order states that
>
> Haltom City . . . will suffer imminent and irreparable harm if . . . Pecos . . . is allowed to purchase properties in Haltom City . . . and seek full tax exemptions for those properties. Specifically, if a temporary

14

injunction is not entered and . . . Pecos . . . is allowed to remove over a million dollars in ad valorem tax revenue from the tax rolls, this will immediately and drastically impact [the city's] fiscal budgeting and decrease the ad valorem taxes it otherwise could have collected from these properties. There is no adequate remedy at law with regard to the impact on city services.

But the only harm identified—lost money in the form of tax revenue—is generally not irreparable because it can be measured by a pecuniary standard and adequately compensated in damages. *See Home Asset, Inc.*, 2023 WL 3183322, at *3 (explaining that harm is irreparable if it "cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard" (citing *Kennedy v. Gulf Coast Cancer & Diagnostic Ctr. at Se.*, 326 S.W.3d 352, 360 (Tex. App.—Houston [1st Dist.] 2010, no pet.))). Because monetary damages are ordinarily reparable, the temporary-injunction order needed to recite facts and explain how the lost tax revenue would irreparably harm Haltom City. *See Williams*, 2023 WL 4781174, at *3. However, the only explanation it provides is that "[t]here is no adequate remedy at law with regard to the impact on city services," and such a conclusory statement about irreparable harm is insufficient. *See Home Asset, Inc.*, 2023 WL 3183322, at *2 (noting that "[a] conclusory statement about irreparable harm cannot support injunctive relief" and explaining that "[a] statement is conclusory if it does not articulate the factual basis on which it rests, effectively insisting that the reader accept the writer's say-so without explanation"). The order does not recite any facts demonstrating how the lost tax revenue would impact city services, identify any specific services that

15

would be affected, or provide any other details explaining how the lost tax revenue would irreparably harm the city. Accordingly, the order fails to satisfy Rule 683's strict requirements. *See id.* at *3–4 (holding that temporary-injunction order stating in conclusory fashion that "the appellees [would] be irreparably harmed if the appellants [were] allowed to terminate [certain] leases without explaining why doing so [would] cause irreparable harm" failed to satisfy Rule 683 and was therefore void on its face); *Clark v. Hastings Equity Partners*, 651 S.W.3d 359, 374 (Tex. App.—Houston [1st Dist.] 2022, no pet.) (holding that temporary-injunction order failed to satisfy Rule 683 because the trial court's barebones recitals that certain parties had violated various covenants and likely would continue to do so if unrestrained and that these violations would cause irreparable harm, including damages impossible to accurately and fully assess, were conclusory).

Because the temporary-injunction orders do not comply with Rule 683, they are void. *See Luther*, 620 S.W.3d at 722. Accordingly, we sustain the Pecos Appellants' second issue.[6]

### III. CONCLUSION

Having determined that the trial court has subject-matter jurisdiction over the Appellees' claims and having held that the temporary-injunction orders do not comply with Rule 683, we (1) declare the temporary-injunction orders void, (2) dissolve the

---

[6]Because the Pecos Appellants' second issue is dispositive, we do not address their third issue. *See* Tex. R. App. P. 47.1.

temporary injunctions, and (3) remand these cases to the trial court for proceedings consistent with this opinion. We further instruct the clerk of this court to issue the mandate immediately. *See* Tex. R. App. P. 18.6; *Williams*, 2023 WL 4781174, at *3.

/s/ Brian Walker

Brian Walker
Justice

Delivered: July 30, 2026

17